IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DAVID HARPER, No. N-72689,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 11-cv-406-MJR |
| | ) | |
| **DERWIN LEE RYKER, J. HENTON,** | ) | |
| **J. OCHS, LT. MIDDLETON,** | ) | |
| **ELAINE HARDY, NURSE HAINES,** | ) | |
| **DR. FINOGLIO, and** | ) | |
| **WEXFORD HEALTH SYSTEMS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff David Harper, an inmate in Lawrence Correctional Center ("Lawrence"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving concurrent twelve year sentences for residential burglary and attempted residential burglary. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

Plaintiff asserts that prison officials placed him with a dangerous cell mate in retaliation for his requests to be moved away from a previous cell mate, failed to protect him from assault by the new cell mate, and then were deliberately indifferent to his need for medical care for his serious injuries after he was attacked by his cell mate.

In March 2010, Plaintiff requested Defendant Warden Ryker to separate him from his cell mate, Rapp, because Rapp believed Plaintiff had been responsible for Rapp losing his prison job. Rapp had verbally threatened Plaintiff (Doc. 1, p. 7). Plaintiff's wife subsequently called her State Representative requesting help in influencing prison officials to move Plaintiff or Rapp to a

different cell.  This resulted in a communication from the representative's office to Lawrence regarding Plaintiff's need to be moved (Doc. 1, p. 8).  On April 20, 2010, the day after Plaintiff's wife made that call, Plaintiff was moved to a cell where he was housed with Inmate Scott.

Plaintiff asserts that this new cell mate was "known on the wing for 'whooping his cellies'" and was "very aggressive." (Doc. 1, p. 7).  The day after the move, Inmate Scott verbally threatened Plaintiff.  The following day (April 22, 2010), Plaintiff reported the threat to Defendant Lt. Middleton and requested an emergency move.  Defendant Middleton responded that there was nothing he could do, and any move would be "up to placement" (Doc. 1, p. 8).

The threats from Scott continued, and on April 24, 2010, Plaintiff approached Defendant Lt. Ochs for help.  Defendant Ochs spoke to Plaintiff at his cell while Scott was absent.  Plaintiff again asked to be moved, stating that "'a fight is going to happen.'" *Id.*  Defendant Ochs told Plaintiff, "You either get along with him or you don't.  You'll be alright," and walked away.  *Id.*

At about 3:30 a.m. on April 26, 2010, Scott attacked Plaintiff without provocation, kicking and stomping him repeatedly.  Plaintiff suffered a broken jaw, two black eyes, a concussion, a possible cracked rib and multiple contusions.  Plaintiff was taken to the Health Care Unit, where Defendant Haines (a registered nurse) wiped the blood off his face.  He was given no other treatment and was moved directly to segregation (Doc. 1, p. 9).  Over the next four days, Plaintiff asked for medical attention from several nurses who made the rounds to his cell.  Plaintiff also sought medical assistance from the officers on duty, specifically telling them he thought his jaw was broken.  Each time, he was told to put in a written request for care.  However, Plaintiff did not have a pen or paper.  He continued to suffer severe headaches and pain, but got no medication or other treatment.

On April 28, 2010, Plaintiff was interviewed by Lt. Hodge (who is not named as a

Defendant) about the incident. During this interview, Defendant Hardy (a nurse practitioner) passed by the room, and Plaintiff told her he was in a lot of pain. At the time, he had obvious injuries including the black eyes, contusions, and an "indented" right lower jaw (Doc. 1, p. 9) However, Defendant Hardy failed to respond with any medical treatment. After the interview with Lt. Hodge, Plaintiff was charged with fighting, and given 30 days in segregation and a 30-day demotion to C-grade. This ticket was later expunged due to a lack of evidence, but Plaintiff had already served the segregation time (Doc. 1, p. 10).

Plaintiff was finally taken to the Health Care Unit on April 29, 2010, where an x-ray revealed his jaw was broken. Plaintiff also asked Defendant Finoglio (the doctor) and Defendant Hardy to check him for a concussion and cracked rib. He claims that they refused to do so (Doc. 1, p. 9).

Despite Plaintiff's broken jaw, he was not put on a liquid diet and received the same food as the rest of the inmates, which he was unable to eat. He lost 26 pounds during the 3 ½ weeks before he underwent corrective surgery on his jaw, on May 19, 2010. The only medication he received for his injuries was 500 mg of Tylenol.

Plaintiff asserts that Defendant Wexford Health Systems, Inc., the employer of Defendants Finoglio and Hardy, has a policy of denying or delaying necessary or emergency medical care in an effort to save money (Doc. 1, p. 6). This policy, as well as the failure of the other medical Defendants to give prompt treatment, prolonged his suffering and resulted in a permanent mouth deformity and increased scarring.

Plaintiff seeks compensatory and punitive damages.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro

se action into four (4) counts, which do not correspond to the four counts Plaintiff has designated in his complaint. The parties and the Court will use the Court's designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Retaliation**

Plaintiff identifies Defendant Henton as the responsible party for making cell assignments at the time this claim arose. Defendant Henton now holds the rank of Major but was acting as Operations Warden when Plaintiff requested a cell change. Plaintiff alleges that Defendant Henton deliberately put him in a cell with another inmate (Scott) who was known to be violent and aggressive, with the intent to "chastise and deter" Plaintiff for having his wife seek the intervention of an elected official on Plaintiff's behalf (Doc. 1, p. 11). Plaintiff states that Inmate Scott's history of previous fights, gang affiliation, and frequent changes of cell mates was documented in prison records. *Id.*

Prisoners have a First Amendment right to free speech, *see Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125 (1977); *Martin v. Brewer,* 830 F.2d 76, 77 (7th Cir. 1987), and restrictions on that right will be upheld only if they are "reasonably related to legitimate penological interests," *see Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989) (citing *Turner v. Safley,* 482 U.S. 78, 89 (1987)); *Massey v. Wheeler,* 221 F.3d 1030, 1035 (7th Cir. 2000). Contacting one's elected representative, either directly or by proxy, is without question a form of protected free speech. Likewise, lodging a complaint or grievance regarding prison conditions is constitutionally protected activity. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). Prison officials may not retaliate against an inmate for exercising his First Amendment rights, or for complaining about

conditions of confinement, even if the officials' actions would not independently violate the Constitution. See *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *DeWalt v. Carter,* 224 F.3d at 618 ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory transfer); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (retaliation for filing lawsuit).

Plaintiff claims that, after waiting almost twenty days for a transfer, he was assigned by Defendant Henton to share a cell with a known violent inmate, immediately after the State Representative's office contacted the prison on his behalf. "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). At the pleadings stage, Plaintiff's allegations are sufficient to suggest that he experienced an adverse action that would likely deter First Amendment activity in the future, and that the First Amendment activity was "at least a motivating factor" in the Defendant's decision to take the retaliatory action. See *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). Accordingly, Plaintiff's retaliation claim against Defendant Henton shall receive further review.

Plaintiff also seeks redress against Defendant Ryker, the prison warden, for a "failure to supervise" that placed Plaintiff in danger when he was housed with the inmate who later attacked him (Doc. 1, pp. 10-11). However, Defendant Ryker's only apparent involvement in the cell placement was his verbal promise to Plaintiff during a chance encounter in the visiting area that he would "get it done," when Plaintiff asked him for a cell change (Doc. 1, pp. 7, 10). Plaintiff

does not allege, nor do the circumstances indicate, that Defendant Ryker made the decision to place Plaintiff in the cell with Inmate Scott; to the contrary, Plaintiff claims that Defendant Henton made the cell assignment.

A prison official cannot be held liable in a civil rights action on the basis that he failed to supervise a subordinate employee, who then caused the constitutional violation. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). See also *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). Defendant Ryker's promise to "get it done" indicates only that somebody would address the cell change request, not that he personally would resolve Plaintiff's problem.

Insofar as the Complaint can be construed as asserting a claim that Defendant Ryker failed to protect Plaintiff from harm at the hands of inmate Rapp, Plaintiff has failed to state a viable claim. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996). In other words, the defendant must have known that there was a substantial risk that those who attacked the plaintiff would do so, yet the defendant failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d

724, 733-34 (7th Cir. 2001). Conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)). In this situation, it was inmate Scott who attacked Plaintiff, not Rapp. Moreover, the Complaint does not indicate that Warden Ryker had been alerted to a substantial threat of attack by either Rapp or Scott, as of March 31, 2010, when Plaintiff spoke to Ryker. Plaintiff alleges only that,

> Harper spoke with Warden Lee Ryker about his then cellmate Jace Rapp (N42725, now deceased) who was caught stealing at his job assignment. Harper[,] along with his wife, asked for a change for either Rapp or himself to keep peace. Warden Ryker said he would "get it done". [sic]

Doc. 1, p. 7). As pleaded, this fails to state a viable Eighth Amendment claim.

Therefore, for the reasons stated, Defendant Ryker shall be dismissed from this action, without prejudice.

**Count 2 - Failure to Protect**

After Plaintiff was threatened by his new cell mate, Inmate Scott, he relayed these threats first to Defendant Middleton, and then to Defendant Ochs, requesting help in obtaining an emergency move. Neither Defendant took any action in response.

As stated previously, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.; Pinkston*, 440 F.3d at 889. A plaintiff

also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

After Plaintiff reported Inmate Scott's first threat, Defendant Middleton said there was nothing he could do, and any action would be "up to placement" (Doc. 1, pp. 8, 11). However, there is no indication that Defendant Middleton relayed Plaintiff's request to any other staff member who might have had the power to make a cell change. Likewise, Defendant Ochs did nothing after Plaintiff reported the subsequent threats, admonishing Plaintiff that he would be "alright" (Doc. 1, p. 12).

Plaintiff's allegations suffice to raise the inference that these Defendants were aware of the specific and impending threat to his physical safety, but did nothing to mitigate that danger. Therefore, the claim against Defendants Middleton and Ochs merits further review.

**Count 3 - Deliberate Indifference to Serious Medical Needs**

Plaintiff states that for four days, he received no medical care for his serious injuries following the attack on him by Inmate Scott. When his broken jaw was finally diagnosed, he was required to wait another three and a half weeks before getting "emergency" surgery to repair the broken bone. Before the surgery, he was given only minimal pain medication, which did not relieve his symptoms.

Generally, an inmate's dissatisfaction with the medical care he receives in prison does not

state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). However, in certain instances, a constitutional claim may lie if a prison official's actions amount to a failure to treat a serious medical condition.

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer*, 511 U.S. at 842.

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). In addition, a condition that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention is also considered a "serious" medical need. *Id.*

Plaintiff's condition immediately after the assault, and in the days following, meets several of the criteria described in Gutierrez. His injuries included blood on his face, multiple contusions, two black eyes, and an "indented" jaw. He immediately complained of severe pain in his jaw, head, back and ribs. These allegations meet the objective showing that Plaintiff had a serious medical condition. The remaining question is whether he has sufficiently alleged deliberate indifference on the part of the various Defendants.

To show deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer,* 511 U.S. at 837. The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"). The Seventh Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Nor will an inmate's disagreement with a doctor's course of treatment state a constitutional claim. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not take sides in disagreements with medical personnel's judgments or techniques). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (discussing *Haley v. Gross*, 86 F.3d

630, 641 (7th Cir. 1996)).

A delay in providing medical treatment "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (discussing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976); *Gayton v. McCoy,* 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder,* 478 F.3d 827, 832 (7th Cir. 2007) ("a plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition")).

**Defendant Nurse Haines**

Defendant Haines was the first health care provider who encountered Plaintiff, immediately after he suffered the attack. She cleaned the blood from his face when he was taken to the Health Care Unit (Doc. 1, p. 13). However, despite Plaintiff's complaints of severe pain and his obvious injuries, she gave him no further care, did not check him for broken bones, and gave him no medication or ice packs to relieve his pain. Under the circumstances described by Plaintiff, Defendant Haines' failure to offer any treatment or pain relief states a claim for deliberate indifference that warrants further review.

**Defendants Elaine Hardy and Doctor Finoglio**

While Plaintiff was in segregation following the assault, he told Defendant Hardy (a nurse practitioner) that he was in severe pain and he thought his jaw was broken (Doc. 1, pp. 9, 13-14). At that time he had visible injuries to his face and jaw. However, Defendant Hardy did not examine him nor offer any pain medication.

Plaintiff saw Defendant Hardy again the following day, when he was finally examined in the Health Care Unit by her and Defendant Finoglio. At that visit, he was diagnosed with a

fractured jaw, for which he later had surgery. Plaintiff also asked both Defendants to examine him for a possible concussion and cracked rib. However, Defendant Finoglioallegedly responded, "We don't do that," and Defendant Hardy stated, "You're not here for that. It'll heal on its own" (Doc. 1, p. 9). Presumably, Plaintiff received the "500 mg of Tylenol" after this visit, which he indicates was inadequate to alleviate his pain.

Finally, Plaintiff claims that these Defendants were responsible for the delay in providing him with surgery to repair his broken jaw, which left him with a "permanent deformity of a misshapen gum line and increased scars" (Doc. 1, p. 14).

### A. Failure to offer pain relief

Defendant Hardy's failure to offer any treatment in response to Plaintiff's request for pain relief while he was in segregation indicates possible deliberate indifference on her part, and this portion of Plaintiff's claim shall receive further review.

### B. Inadequate Treatment of Concussion and Cracked Rib

The response of Defendants Hardy and Finoglio to Plaintiff's complaint of a possible concussion and cracked rib is more ambiguous. The statement that this condition would "heal on its own" coupled with the Tylenol prescription could indicate a medical opinion and a treatment response to this complaint. A brusque or callous attitude does not equal deliberate indifference. At this stage of the litigation, it cannot be determined whether this minimal response was appropriate treatment, malpractice, or constitutional deliberate indifference. Therefore, this portion of the claim against Defendants Finoglio and Hardy is not subject to dismissal at this time.

### C. Delay in Surgery

Plaintiff's surgery to repair his broken jaw, which he characterizes as "emergency"

treatment, was not provided until 3 ½ weeks after his injury.  He alleges that Defendants Hardy and Finoglio shared in the responsibility for this delay, and attributes his permanent deformities directly to the delay in obtaining surgery.  It cannot be determined at this time who may have been responsible for the delay in care, yet Plaintiff states a claim that merits further review.  Accordingly, Plaintiff may proceed against Defendants Hardy and Finoglio for deliberate indifference to his need for timely surgery.

### Defendant Wexford Health Systems, Inc.

Defendant Wexford Health Systems, Inc. ("Wexford"), is a corporation that employs Defendants Haines, Hardy, and Finoglio, and provides medical care at the prison, but it cannot be held liable solely on that basis.  A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right.  *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).  *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).  Plaintiff has alleged that the 3 ½ week delay in obtaining "emergency" surgery to treat his broken jaw was the result of an official policy espoused by Defendant Wexford, to save money by delaying or denying medical care to inmates.  Therefore, Plaintiff's claim against Defendant Wexford shall proceed.

**Count 4 - Unjustified Segregation**

Finally, Plaintiff complains about having been required to serve 30 days in segregation on the fighting charge that was later expunged due to lack of evidence.  The disciplinary charge was expunged too late to save Plaintiff from serving time in segregation.  Nonetheless, this set of facts does not state a constitutional claim upon which relief may be granted.

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held

that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed).  The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan,* 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

Plaintiff says nothing about whether he was given a hearing on the charge that afforded him the procedural protections described in *Wolff*.  However, the Court presumes that some hearing may have taken place, in order for the charge to have been expunged.  If, in contrast, Plaintiff had been found guilty of the false charge after a hearing, he would not have a constitutional claim so long as the decision of the disciplinary hearing board was supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).  Moreover, even if Plaintiff had not been afforded the procedural protections in *Wolff*, he still would not necessarily have an actionable claim.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court of the United States rejected an argument that "any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause." *Id.* at 484.  Furthermore, the Supreme Court held that while a state could create a liberty interest protected by the Due Process Clause, such interests were limited to cases where the discipline imposes an "atypical, significant deprivation" on the inmate in relation to the ordinary incidents of prison life - especially totally discretionary types

of confinement such as administrative segregation and protective custody. *Id.* at 486.

In light of *Sandin*, the Seventh Circuit has observed that "the right to litigate disciplinary confinements has become vanishingly small." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.* at 1176.

This Court understands *Sandin* and *Wagner* as holding that even a prisoner's arbitrary confinement in disciplinary segregation, administrative segregation, or protective custody does not implicate any liberty interest – under either the Due Process Clause or state law – so long as the confinement itself does not constitute an "atypical, significant deprivation." A particular confinement is "atypical [and] significant" only if the conditions under which the inmate is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner*, 128 F.3d at 1175. Subsequent opinions by the Seventh Circuit have explained that where the duration of confinement in segregation is relatively short, no liberty interest will be implicated. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 n.2 (7th Cir. 2009) (collecting cases).

In Plaintiff's case, nothing in the complaint or exhibits suggests that the conditions that Plaintiff had to endure in the unjustified segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Nor does the duration (30 days) of Plaintiff's time in segregation trigger due process concerns. Accordingly, Plaintiff has failed to allege facts indicating that he was deprived of a liberty interest, either under the Due Process Clause or created by the State, and this claim shall be dismissed with

prejudice.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 4** fails to state a claim upon which relief may be granted, and is **DISMISSED,** with prejudice. Defendant **RYKER** is **DISMISSED** from this action, without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **HENTON, OCHS, MIDDLETON, HARDY, HAINES, FINOGLIO** and **WEXFORD HEALTH SYSTEMS, INC.** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document

submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 26, 2012**

                                                                                                            **s/ MICHAEL J. REAGAN**
                                                                                                           **U.S. District Judge**