IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAVID HARPER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 11–cv–406–MJR–SCW |
| ) | |
| JASON HENTON, AARON ) | |
| MIDDLETON, JAMES OCHS, ELAINE ) | |
| HARDY, JAMES FENOGLIO, HELEN ) | |
| HAINES, WEXFORD HEALTH | |
| SOURCES, | |
| | |
| **Defendant.** | |

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### I. Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to **28 U.S.C. § 636(b)(1)(B), FEDERAL RULE OF CIVIL PROCEDURE 72(b), and LOCAL RULE 72.1(a)** for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections. It is **RECOMMENDED** that the Court **FIND** that Plaintiff has exhausted his administrative remedies against Defendants Helen Haines, James Fenoglio, and Wexford Health Sources, that Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 57) be **DENIED**, and that the Court **ADOPT** the following findings of fact and conclusions of law.

### II. Findings of Fact

Plaintiff filed his Complaint on May 13, 2011 alleging that prison officials failed to protect him from an assault by his cell mate and then were deliberately indifferent to his medical needs for the injuries he sustained in the attack by his cell mate (Doc. 11). Only the deliberate indifference

claim is at issue for purposes of this motion. As to the deliberate indifference claim, Plaintiff's Complaint alleges after the assault by his cellmate he received no medical care for his injuries for four days. As a result of the assault, Plaintiff suffered a broken jaw, two black eyes, a concussion, possible cracked ribs, and multiple contusions (Doc. 11 at p. 3). Plaintiff suffered a broken jaw from the attack but after being diagnosed he was required to wait three and a half weeks before having surgery to repair his jaw. Prior to surgery, he was only given minimal pain medication which did not help his pain symptoms.

Specifically, as to Defendant Haines, Plaintiff alleges that he met with her immediately after the attack when he was taken to the health care unit and that she cleaned his face by wiping the blood off, but gave him no further care (*Id.*). Plaintiff alleges that Defendant Haines did not check him for broken bones or give him pain medication or ice, despite his obvious injuries. Plaintiff was then moved to segregation. For the next four days, Plaintiff alleges he received no medical treatment, despite numerous requests to medical personnel and guards for medical assistance (*Id.*).

Plaintiff did not see Defendant Finolgio until April 29, 2010 when he was finally taken back to the Health Care Unit and received an x-ray which revealed a broken jaw (*Id.* at p. 4). Plaintiff alleges that when he finally saw Defendant Finoglio, Plaintiff also asked to be checked for a possible concussion and cracked ribs but that Finoglio allegedly responded "we don't do that" and Defendant Finolgio allegedly refused to check his head and ribs (*Id.* at pp. 4 & 13). He also alleges that Finoglio prescribed him Tylenol which did not alleviate his pain. Plaintiff's Complaint also alleges that Finoglio was deliberately indifferent in causing a delay in surgery for his broken jaw (*Id.*). As to Defendant Wexford Health Sources, Plaintiff alleges that it has a policy for denying or delaying necessary or emergency medical care as a means of saving money which caused his injuries to go untreated and prolonged his suffering (*Id.* at p. 4).

In their Answer to Plaintiff's Complaint, Defendants Helen Haines, James Fenoglio, and Wexford Health Sources raised the affirmative defense that Plaintiff has failed to exhaust his administrative remedies under 42 U.S.C. § 1997e(a) (Docs. 42, 45, & 48). Subsequently Defendants filed a motion for summary judgment on the issue of exhaustion (Docs. 57 & 58). In the motion, Defendants allege that while Plaintiff's grievances did raise allegations against a Defendant Elaine Hardy, none of his grievances mention the names of or describe the conduct of Defendants Haines, Fenoglio, and Wexford. Plaintiff filed a Response to the motion arguing that at the time he filed his grievances he did not know the proper defendants and only included the details that he had available to him at the time he wrote the grievances (Doc. 61).

The grievance at issue in this matter was dated May 6, 2010.[1] In the grievance Plaintiff alleged that he received subpar treatment for his injuries stemming from the assault (Doc. 61 Ex. B at p.3). He claims that as a result of this assault he received a black eye, broken jaw, and possible concussion and cracked ribs but that no one in healthcare would treat his injuries (*Id.*). Specifically, he claimed that he informed Nurse Practitioner Elaine Hardy about his injuries while he was being interviewed by Internal Affairs (*Id.*). He stated that he had received no further treatment besides his initial visit to the Healthcare Unit on the day of the assault when blood was wiped from his face (*Id.* at p. 4). No further treatment was given and he was only given 325 mg of Tylenol for the pain. He asked every nurse that came by his cell for help but they do not help him. He noted that he had an x-ray on 4/20/2010 and although Nurse Hardy told him the jaw would heal on its own, the Dentist told him no, that if there is one break there are usually more (*Id.*). Plaintiff complained that treatment was sub-par

---

[1] Plaintiff filed another grievance related to his assault on June 5, 2010 and although he does mention the injuries he received, that grievance regarded the officials who placed him in the cell with the inmate who beat Plaintiff up. The grievance does not grieve any of the medical care he received after the assault (Doc. 1-1 at pp. 28-37)..

due to lack of manpower and finances.

Plaintiff's grievance was reviewed by the Grievance Officer on June 24, 2010 and was denied because the Health Care Unit indicated that he received appropriate care and was seen by the nurse on 4/26/2010 and the nurse practitioner on 4/28/2010 (Id. at p. 5). Plaintiff also received x-rays, according to the report on 4/29/2010. The grievance was also denied by the ARB who found that Plaintiff had received adequate medical care (Doc. 1-1 at p. 22). While the ARB does note that issues of staff conduct could not be addressed because Plaintiff failed to adequately identify the individual staff or the location and dates of alleged misconduct, this appears to relate to Plaintiff's grieving regarding staff mocking him and does not appear to be related to any of the medical staff or Plaintiff's medical care (Id.).

As the undersigned has determined that there are no disputes of fact as to exhaustion, the Court finds that a *Pavey* hearing is not necessary as the issues presented are solely legal questions.

### III. Conclusions of Law

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** The Court must construe all facts in the light most favorable to Plaintiff, as the non-moving party, and draw all reasonable inferences in his favor. *Ogden v. Atterholt*, **606 F.3d 355, 358 (7th Cir. 2010)**.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. § 1997e(a)**. That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted*." *Id*. **(emphasis added).** The Seventh Circuit requires strict

adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion")**. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004)**. Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005)**. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.** Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." ***Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).**

A.     **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Hall was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code § 504.800** *et seq*. The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id*. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her

satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).**"The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f)**.

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a)**. If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 U.S.C. §504.840(b)**. Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 U.S.C. §504.850(g)**.

B.     Analysis

Defendants argue in their summary judgment motion that Plaintiff failed to exhaust his claims against Haines, Fenoglio, and Wexford because he failed to name, or otherwise describe them, in his grievance. Plaintiff does not deny that he did not name the Defendants in his grievance but argues that he provided the only details he had available to him at the time and described them to the

best of his abilities.

There is no dispute that the May 6, 2010 grievance at issue in this case does not name Defendants Haines, Fenoglio, or Wexford. However, the fact that Plaintiff failed to name or describe Haines, Fenoglio, or Wexford does not constitute a failure to exhaust. While the grievance procedure for inmates housed in the Illinois Department of Corrections requires inmates to identify the individuals they are grieving against, inmates are not required to necessarily name the individual involved but rather are required to "include as much descriptive information about the individual as possible" if the names of individuals are not known. **20 Ill. Admin. Code 504.810 (b).** Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve its function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, **655 f.3d 709, 722 (7th Cir. 2011).** When prison officials have been afforded an opportunity to address an inmate's claims internally, prior to federal litigation, the purpose of exhaustion has been met and the prisoner has properly exhausted his available remedies. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006).**

Here, Plaintiff's grievance of May 6, 2010, provided prison administrators with a "fair opportunity" to address his complaints about his medical care for his broken jaw. Although he does not name either of the individual Defendants, Plaintiff's grievance indicates that he did see the healthcare on the day of the incident and all they did was wipe the blood off of his face and that they failed to treat him further. Plaintiff also indicates that he had an x-ray and that it was determined he had a broken jaw but that nothing further was done even though the dentist told him that there were most likely more breaks that would need treatment. While Defendants Haines and Fenoglio were not specifically named, Plaintiff provided enough information in his grievance to provide prison administrators with notice of his complaints and they could have easily viewed the medical records to determine which doctors and nurses treated Plaintiff or were responsible for his treatment. In fact, the

Grievance Officer's report indicates that the officer spoke with the Health Care Unit and that Plaintiff had indeed seen a nurse on the day of the incident as well as had x-rays taken days after the incident. Thus, there was clearly enough information for officials to determine who Plaintiff was grieving and to address the issues raised in his grievance. Further, the Court notes that Plaintiff's grievance was resolved on the merits and was not returned for failure to follow procedural rules, an action the Seventh Circuit has indicated is a signal that the issues have properly been exhausted. *See Riccardo v. Rausch*, **375 F.3d 521, 524 (7th Cir. 2004) (When a grievance is "resolved on the merits" despite an inmate's failure to strictly adhere to the rules, "the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action.");** *see also Cannon v. Washington*, **418 F.3d 714, 719 (7th Cir. 2005) (the "exhaustion requirement is designed to alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation").** Here, neither the prison administrators nor the ARB rejected Plaintiff's grievances on grounds that it did not properly identify the medical personnel at issue in his grievance,[2] evidencing that administrators were given enough information to alert them of the problems and enable them to take corrective action. That is all that the PLRA and the Seventh Circuit requires.

    The same goes for Wexford Health Sources. While Plaintiff does not name or describe Wexford, he did provide enough information about his medical problems to provide prison

---

[2] While the ARB response indicates that it could not address certain misconduct by staff because Plaintiff failed to identify the staff at issue or the dates and locations of the misconduct, the ARB does not appear to be referring to medical staff nor do Defendants argue that ARB was referring to medical staff. The ARB's findings appear to be related to Plaintiff's grieving conduct of officers who called Plaintiff names due to his physical condition after the alleged assault. Further, Defendants do not deny that the ARB addressed Plaintiff's grievance regarding his medical care on the merits (See Doc. 58 at p. 2 ("The documents...show a counselor's response, a grievance officer's response and, ultimately, a decision on the merits from the Office of Inmate Issues (better known as the Administrative Review Board or "ARB".)).

administrators with a fair opportunity to deal with his complaints and to inquire as to whether any policies or practices of Wexford caused the delay in treating Plaintiff's jaw. In fact, Plaintiff specifically states in his grievance that he received sub-par care due in part to the manpower and financial issues in the healthcare unit. Clearly, this was enough information to put administrative officials on notice that Plaintiff was grieving about policies or procedures of Wexford as IDOC officials clearly know that Wexford is contracted out for the prison's healthcare and would, more than likely, be the entity responsible for the manpower and financial issues Plaintiff describes, a fact Plaintiff himself might not be readily aware of. As this Court has previously reasoned, to hold otherwise in dealing with claims against Wexford would lead to an odd result, as it would allow a "corporate defendant (who presumably works with the prison officials in charge of reviewing grievances) [to] avoid liability because a prisoner (whose interaction with the prison health system is limited to doctors and nurses, whom he may not even know work on a contract basis) would be required to grieve corporate policies." *Conley v. Birch*, **Case No.: 11-cv-13-MJR-SCW, 2012 WL 4202702, at \* 5 (S.D. Ill. Sept. 19, 2012).** Clearly, the prison administrators are in a better position to examine whether any policies or manpower and financial procedures of Wexford caused or contributed to the delay in Plaintiff's treatment, as Plaintiff would possibly not have any knowledge of Wexford's existence or its contractual relationship with IDOC. Thus, the undersigned finds that Plaintiff provided prison officials with enough information to examine the issues in his grievance, including any policies of Wexford that pertained to his delay in treatment. Accordingly, the undersigned **RECOMMENDS** that the Court **DENY** Defendants' motion for summary judgment as Plaintiff has exhausted his administrative remedies against Defendants Haines, Fenoglio, and Wexford.

### IV. Conclusion

Therefore, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has

exhausted his administrative remedies and **DENY** Defendants' partial motion for summary judgment (Doc. 57).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004)**. <u>**Accordingly, Objections to this Report and Recommendation must be filed on or before December 17, 2012**</u>.

**IT IS SO ORDERED**.

DATED: November 30, 2012.

/s/
STEPHEN C. WILLIAMS
United States Magistrate Judge