**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**DAVID HARPER,**

**Plaintiff,** )
)
**vs.** ) **Case No. 11-cv-406-SCW**
)
**JASON HENTON, JAMES OCHS, AARON MIDDLETON, ELAINE HARDY, HELEN HAINES, JAMES FENOGLIO, and WEXFORD HEALTH SOURCES, INC.,** )

**Defendant.**

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I. Introduction

Before the Court are two summary judgment motions filed by Defendants [1] Defendants Elaine Hardy, Helen Haines, James Fenoglio, and Wexford Health Sources, Inc. filed a summary judgment motion on Plaintiff's deliberate indifference claims against them (Docs. 85, 86, and 89). Plaintiff filed a Response to that motion (Doc. 96). Defendants filed a Reply brief (Doc. 98). Defendant Jason Henton also filed a motion for summary judgment on Plaintiff's retaliation claim against him (Docs. 87 and 88). Plaintiff filed a Response (Doc. 93). Based on the following, the Court **GRANTS** both summary judgment motions (Docs. 85, 86 and 87,88).

### II. Findings of Fact

The facts which make up the basis of Plaintiff's Complaint occurred while Plaintiff was housed at Lawrence Correctional Center. At 3:30 a.m. on April 26, 2010, Mr. Harper and Inmate

[1] The Court notes that neither Defendant James Ochs or Defendant Aaron Middleton have filed summary judgment motions. Thus, Plaintiff's failure to protect claim against those Defendants remains pending for trial.

Terry Scott were in an altercation which resulted in Plaintiff being beaten and receiving a broken jaw. Prior to this altercation, Plaintiff had been housed with Inmate Jace Rapp but Plaintiff sought to be removed from that cell (Doc. 86 Ex. C-1 at pp. 13-14). Plaintiff complained to officers on his floor, to the warden, and wrote a letter to the placement office asking to be removed from Rapp's cell (*Id.*). He did not discuss the issue with Jason Henton, the Assistant Warden of Operations (*Id.*). Plaintiff informed his wife that Rapp was threatening him and she contacted State Representative Bill Black (*Id.* at pp. 15-17). Plaintiff believes that Representative Black then contacted the Illinois Department of Corrections and Plaintiff was transferred from Rapp's cell to Inmate Terry Scott's cell in April 22, 2010 (*Id* at pp. 18-22). At the time that Plaintiff was moved from his cell, Defendant Jason Henton was "Acting Assistant Warden of Operations" and oversaw the security of the facility and various other departments within the prison. (Doc. 88 Ex. 1 at ¶ 2). The placement office fell under Henton's supervision but he did not actively participate in placing inmates (*Id.* at ¶ 3). He also stated that he did not receive any calls from Plaintiff's wife or a politician (*Id.* at ¶ 5).

Plaintiff indicates that prior to his cell transfer, he had informed Defendant Middleton, who is not a party to the current motions for summary judgment, that he wanted a cell change and Defendant Middleton informed him that cell assignments were the responsibility of the placement office (Doc. 51 at ¶61).[2]

In the early morning of April 26, 2010, Plaintiff was in an altercation with his cellmate, Inmate Terry Scott. At 3:55 a.m., after the altercation, Plaintiff was examined by Helen Haines, a licensed practical nurse at Lawrence Correctional Center (Doc. 86 Ex. A at ¶ 2). The medical records note that Haines cleaned superficial lacerations to Plaintiff's face (Doc. 86 Ex. B-1 at p. 1). Haines

[2] Plaintiff alleges that his new cellmate, Terry Scott, was known to be dangerous, but these allegations are not relevant to the current motion. Rather, they relate to Plaintiff's claims against Defendants Ochs and Middleton.

filled out an Offender Injury Report which noted that Plaintiff had superficial lacerations near his left eye, forehead, and nose, as well as a swollen eye, and that he was bleeding from his nose (Doc. 86 Ex. D). She also filled out an Incident Report stating that he was brought to the health care unit, an injury report was filled out, and he was sent to segregation (Doc. 86 Ex. E). Dr. James Fenoglio reviewed the report on April 27, 2010 and indicated he would see Plaintiff on an as needed ("PRN") basis (Doc. 86 Ex. D; Doc. 98 Ex. G-1[3]). Plaintiff testified in his deposition that he spoke to Haines and told her that there was something wrong with his mouth and that Haines took out his lower dentures and looked inside his mouth, noting blood (Doc. 86 Ex. C-1 at pp. 44-45). Haines stated that she did not know that Plaintiff had a fractured jaw and believed he only suffered superficial lacerations (Doc. 86 Ex. A at ¶ 9). She informed Plaintiff that he should follow up with a nurse as needed (Doc. 86 Ex. B-1 at p. 1). This was Plaintiff's only encounter with Haines regarding this incident; she did not see him prior to his surgery on May 19, 2010.

On April 28, 2010, while Plaintiff was in segregation, Elaine Hardy did a call line at approximately 2:00 p.m. in segregation (Doc. 86 Ex. B-1 at p. 1). Hardy stated that Plaintiff was not in her call line as he was in the lieutenant's office, but that the lieutenant asked her to examine Plaintiff (Doc. 86 Ex. F at ¶ 5). Plaintiff testified in his deposition that Hardy came into the office and laughed at him, joking that he should have bobbed and weaved, and looked at him from a distance (Doc. 86 Ex. C-1 at p. 48). The medical records indicate that Hardy noted a dentation on Plaintiff's jaw and that he complained of jaw pain and stated "I think it is broke." (Doc. 86 Ex. B-1 at p. 1). Haines noted bruising and tenderness (*Id.*) She also removed his dentures to examine him (*Id.*) She then

[3] Plaintiff takes issue with Fenoglio's affidavit stating that his affidavit indicated that he reviewed the wrong records. The affidavit indicated that he reviewed Mr. Moore's IDOC medical records (See Doc. 86 Ex. G at ¶4). This appears to be a mere typographical error which Defendants admit to and have supplemented with a corrected exhibit (Doc. 98 Ex. G-1). This appears to be accurate as the remainder of the original affidavit refers to Mr. Harper and the exhibits attached to the affidavit are from Harper's medical records. Thus, there is no indication that Fenoglio reviewed the wrong records as Plaintiff suggests.

ordered x-rays for the following day for the facial, nasal, and mandibular/jaw area of Plaintiff's face (*Id.*). She did not prescribe pain medication as Plaintiff did not appear to be in severe pain (Doc. 86 Ex. F at ¶ 7). Hardy referred Plaintiff to Dr. Mark Litherland, the dentist (Doc. 86 Ex. F; Ex. B-1 at p. 8). Plaintiff received x-rays on April 29, 2010 (Doc. 86 Ex. B-1 at p. 2). He also met with Dr. Litherland who noted a referral to an oral surgeon (Doc. 86 Ex. B-1 at p. 8). Also on April 29, 2010, Dr. Fenoglio signed the Medical Special Services Referral Report to Wexford, noting that Plaintiff had seen the dentist and needed approval of a referral to Dr. Swanson, an oral surgeon, to stabilize his fractured mandible (Doc. 86 Ex. B-1 at p. 10). Dr. Fenoglio marked urgent on the form (*Id.*).

Defendant Hardy reviewed Plaintiff's chart on May 5, 2010 and noted that Plaintiff had an appointment with Dr. Swanson, an oral surgeon, on May 7, 2010 and that the x-rays would be sent to Dr. Swanson (*Id.* at p. 3). On May 5, 2010, the authorization from Wexford for the referral to an oral surgeon was received (*Id.* at p. 11). The authorization noted that Plaintiff had been seen by the dentist who recommended urgent oral surgery evaluation (*Id.*). On May 7, 2010, Plaintiff saw Dr. Swanson and he scheduled surgery for May 12, 2010 (*Id.* at pp. 4, 13). Dr. Fenoglio was notified and a referral was faxed to Wexford (*Id.* at pp. 4, 14). Defendant Hardy also reviewed Plaintiff's chart on that day and ordered pre-op labs (*Id.* at p. 5). Dr. Fenoglio conducted a pre-op on May 10, 2010 (Doc. 86 Ex. G at Ex. C). A phone call was received on May 10, 2010 from Dr. Swanson's office indicating that the surgery would have to be rescheduled for May 19, 2010 due to a family emergency (Doc. 86 Ex. B-1 at p. 6). Hardy reviewed Plaintiff's chart on May 17, 2010 and ordered new pre-op orders for the new surgery date (*Id.* at p.7). From April 27, 2010 to May 19, 2010, Plaintiff was visited by a nurse in segregation during sick call rounds on eighteen occasions with no complaints (Doc. 86 Ex. B-2 at pp. 32-33). Plaintiff received his surgery on May 19, 2010.

## III. Conclusions of Law

### A. Summary Judgment Standard

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)).** ***See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).** A fact is material if it is outcome determinative under applicable law. ***Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson*, 477 U.S. at 248.** "A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." ***Albiero v. City of Kankakee*, 246 F.3d 927, 931–32 (7th Cir. 2001) (citations and quotations omitted).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. ***Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts

reasonable inferences and resolves doubts in the nonmovant's favor. ***Id.***; ***Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." ***Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004), abrogated on other grounds by *Spiegla II*, 481 F.3d at 966 (7th Cir. 2007).** ***See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).**

**B. Request to have Complaint Admitted**

In response to both summary judgment motions, Plaintiff requests that the Court deem the facts in Plaintiff's Complaint as admitted pursuant to Rule 8(b)(6). **Federal Rule of Civil Procedure 8(b)(6)** states that "[a]n allegation…is admitted if a responsive pleading is required and the allegation is not denied." Plaintiff argues that Defendants did not specifically respond to Plaintiff's paragraphs 1-50 in his Complaint and thus the Court should deem those facts admitted. The Court **DENIES** Plaintiff's request. Defendants filed Answers to Plaintiff's Complaint (Docs. 39, 42, 45, 48, and 51). Although Defendants' Answers did not specifically respond to each paragraph of Plaintiff's Complaint, as Defendants point out, this Court, in its June 26, 2012 order, divided Plaintiff's Complaint into four counts and instructed the parties to use these designations in all future pleadings (Doc. 11 at pp. 4-5). Defendants, thus, responded to the designated counts in accordance with this Court's threshold order. The Court also notes that Plaintiff never complained about Defendants' Answers, which included denials, until responding to the motions for summary judgment. The Court will not, therefore, deem Plaintiff's Complaint admitted.

**C. Deliberate Indifference**

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'

proscribed by the Eighth Amendment." ***Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).** In order to prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." ***Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).**

Defendants do not argue that Plaintiff's injuries constituted a serious medical condition, instead they argue that they were not deliberately indifferent to that condition. The second prong of the deliberate indifference analysis requires that a prisoner show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" ***Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).** "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." ***Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985).** Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. ***Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).**

Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. ***Greeno*, 414 F.3d at 653**. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." ***Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted).** An inmate does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly

inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." ***Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).**

The Seventh Circuit has noted that the standard is "a high hurdle..because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" ***Roasrio v. Brawn*, 670 F.3d 821-22 (7th Cir. 2012) (*Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)).** "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" ***Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).**

*1. Helen Haines*

The Court finds that Helen Haines is entitled to summary judgment as there is no evidence to suggest that she was deliberately indifferent to Plaintiff's broken jaw. Plaintiff alleges in his Complaint that Defendant Haines failed to offer him treatment or pain relief for his injury and jaw. However, Plaintiff fails to offer any evidence indicating that Haines was deliberately indifferent.[4] The evidence in the record indicates that Defendant Haines only saw Plaintiff once, shortly after he sustained his injuries on April 26, 2010. She examined him, noting superficial lacerations, a bloody nose, and swollen eye. Haines cleaned his injuries, filled out an Offender Injury Report noting the same, and noted that Plaintiff was instructed to put in a nurse sick call if he had any further problems.

[4] The Court notes that Plaintiff's responses to both summary judgment motions (Docs. 94 & 96) rely solely on this Court's findings in its June 26, 2012 §1915A review of Plaintiff's claims. Plaintiff recites the entirety of this Court's review and states that it is a thorough and in-depth analysis of Plaintiff's claims and demonstrates the circumstantial evidence in this case and is enough of a basis to deny summary judgment. However, the standard used in this Court's §1915A review only required the Court to review the Complaint for frivolous and malicious claims and to ensure that Plaintiff's Complaint stated a claim. But, at the summary judgment stage, Plaintiff must come "forth [with] specific facts showing that there is a genuine issue for trial." ***Anderson*, 477 U.S. at 250(quoting FED. R. CIV. P. 56(e)(2)).** At this point a plaintiff cannot merely rely on allegations in his pleadings, as Plaintiff seems to do here. ***Serednyj v. Beverly Health Care, LLC*, 656 F.3d 540, 547 (7th Cir. 2011).** Thus, Plaintiff's sole reliance on this Court's recitation of the claims is misguided.

There is no indication that she knew that Plaintiff suffered a broken jaw and Plaintiff admits that he did not tell her he thought his jaw was broken and was able to talk during his examination by Haines (Doc. 86 Ex. C-1 at p. 44-47). This was the only time that Haines saw Plaintiff for this injury.

Plaintiff argues that he did tell Haines that his jaw hurt, stating that he told her something was wrong with his jaw and his mouth, and that her failure to provide further care amounted to deliberate indifference. Plaintiff testified that in response to his expressed pain in his jaw, Haines took out his lower dentures, looked inside and noted that there was blood in his mouth. This, however, shows the opposite of deliberate indifference. Haines examined his mouth and did not note any injuries. Even assuming that Haines did exam Plaintiff's mouth and was not able to determine that his jaw was broken, her inability to diagnose his injury amounts to negligence, at best. The evidence suggests that on the only encounter with Plaintiff, Haines examined him and treated the only injuries she believed he had. Her failure to diagnose his broken jaw on that occasion does not amount to deliberate indifference.

*2. Elaine Hardy*

Plaintiff alleges in his Complaint that Defendant Elaine Hardy was deliberately indifferent to his broken jaw by delaying his surgery and by failing to provide him with pain medication. As to Plaintiff's allegations that Defendant Hardy delayed the surgery to his broken jaw, the Court finds that Defendant hardy is entitled to summary judgment on that claim. A delay in treatment may amount to deliberate indifference if a physician intentionally withheld treatment and that delay resulted in unnecessary pain or harm. ***Johnson v. Loftin*, 464 F.3d Apx. 530, at * 3 (7th Cir. 2010); *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2010).** However, there is no evidence in the record that suggests that Defendant Hardy delayed surgery. The record reflects that Hardy saw Plaintiff on April 28, 2010 and that Plaintiff informed her that he had jaw pain and that he thought his

jaw was broken. The medical records reflect that Hardy removed Plaintiff's dentures and examined his mouth and also noticed a dentation in his jaw. She then scheduled Plaintiff for an x-ray and an appointment with the dentist for the next day. After the x-rays and dentists confirmed Plaintiff had a broken jaw on April 29, 2010, the process began to obtain treatment from a specialist for Plaintiff. A request for a referral to a specialist was sent to Wexford and marked as "urgent" on April 29, 2010, and upon receiving the approval back from Wexford on May 5, 2010, Plaintiff was scheduled to meet with Dr. Swanson, an oral surgeon, on May 7, 2010. On May 7, 2010, Dr. Swanson then scheduled Plaintiff for surgery on May 12, 2010 but ultimately rescheduled the surgery for May 19, 2010 based on a family emergency on Dr. Swanson's end. There is no evidence in the record that Hardy delayed Plaintiff's treatment or his surgery. All of the evidence in the record indicates that Defendant Hardy immediately began the process of confirming Plaintiff's injuries and seeking treatment from a specialist when she initially examined Plaintiff and that any delay in the surgery from the time Plaintiff saw Dr. Swanson was due to the schedule of Dr. Swanson, not through any action on the part of Defendant Hardy. ***Knight*, 590 F.3d at 466-67 (no evidence delay was caused by willful ignorance or malice)**.

Plaintiff makes much of the fact that his initial encounter with Defendant Hardy is disputed. Plaintiff indicates that when he met with Defendant Hardy on April 28, 2010, she looked at him and laughed. Even if this evidence is taken as true, her actions do not amount to deliberate indifference. The records indicate, and Plaintiff confirmed in his deposition, that the next day he was taken for an x-ray and seen by the dentist. The records indicate that Defendant Hardy scheduled him for these examinations. Thus, the evidence in the record suggests that Defendant Hardy promptly sought a diagnosis and treatment for Plaintiff's injuries immediately after her first examination of Plaintiff. Plaintiff fails to point to any evidence suggesting that the delay in surgery was intentionally

caused by Defendant Hardy. Thus, the Court finds that Defendant Hardy is entitled to summary judgment on that claim.

The Court also finds that there is no evidence that Defendant Hardy was deliberately indifference in failing to provide Plaintiff with pain medication. Plaintiff admits that he was prescribed Tylenol for his pain by the dentist, Dr. Litherland, after being examined by him on April 29, 2010 (Doc. 86 Ex. C-1 at p. 52). The medical records indicate that Plaintiff was still taking Tylenol for his pain prior to his surgery on May 18, 2010 (Doc. 86 Ex. B-1 at p. 9). While the medical records indicate that Dr. Swanson did prescribe Plaintiff with Lortab, there is nothing in the record as to whether he received this medication and Defendant Hardy did not see Plaintiff after his May 7, 2010 appointment with Dr. Swanson (See Doc. 89 at ¶¶ 10-13). The evidence in the record does suggest that he was still taking Tylenol as of his surgery and Defendant Fenoglio noted that he was in no acute distress during Plaintiff's original pre-op appointment on May 10, 2010 (Doc. 86 Ex. B-1 at p. 9; Doc. 98 Ex. G-1 at ¶ 16). Defendant Fenolgio stated that he did not believe narcotic pain medication was necessary at that time (Doc. 98 Ex. G-1 at ¶ 16). Thus all the evidence suggests that Plaintiff was given medication for his pain and his argument that his pain medication should have been a narcotic appears to be a mere disagreement in treatment as it was determined by Fenoglio that narcotics were not needed. Further, there is no indication that Defendant Hardy failed to give him pain medication as he was prescribed Tylenol and she did not see him after he met with Dr. Swanson. The medical records also show that Plaintiff was seen by nurses during segregation sick call rounds on May 10, 11, 12, 14, 15, 16, and 18, and the records indicate that he had no complaints (Doc. 86 Ex. B-2 at pp.32-33). Plaintiff could have sought additional pain medication on those visits, but there is no indication in the record that he did so. Thus, the Court finds no evidence to suggest that Defendant Hardy was deliberately indifference in not prescribing him pain medication.

### 3. *James Fenoglio*

Plaintiff's Complaint alleges that Defendant Fenoglio was deliberately indifferent to Plaintiff's broken jaw by delaying his jaw surgery for three and half weeks. However, there is no evidence that Fenoglio was deliberately indifferent in treating Plaintiff's broken jaw. The evidence in the record indicates that Fenoglio reviewed Nurse Haines' Offender Injury Report that Plaintiff suffered from superficial lacerations and signed off on the report, indicating that Plaintiff only needed to be seen on an as needed basis. The parties do not dispute that Fenoglio did not see Plaintiff on April 27, 2010, the day Fenoglio reviewed the report and there is no evidence in the report that Plaintiff suffered from a broken jaw. Fenoglio also submitted a request on April 29, 2010 to Wexford for Plaintiff to be seen by the oral surgeon. This request was signed the same day Plaintiff both had x-rays of his jaw and saw the dentist. After confirming a broken jaw from the x-rays, Fenoglio submitted the request to Wexford and marked the request as "urgent". That request was approved on May 4, 2010 and medical staff made an appointment on May 5, 2010 for Plaintiff to see the oral surgeon on May 7, 2010. The day Plaintiff met with the oral surgeon, Dr. Swanson deemed surgery necessary and scheduled the surgery for May 12, 2010. Dr. Fenolgio faxed a request to Wexford on May 7, 2010 for surgery on May 12 and the surgery was approved on May 10, 2010. Dr. Swanson then rescheduled the surgery for May 19, 2010 due to his own family emergency.

There is no evidence in the record that Fenoglio was deliberately indifferent to Plaintiff's broken jaw or that his actions delayed Plaintiff's surgery. In fact, the record reflects that upon learning that Plaintiff had a broken jaw, he immediately sought approval from Wexford for Plaintiff to be seen by an oral surgeon and when surgery was deemed necessary he, again, immediately submitted a request for surgery. He also marked the request to Wexford to be seen by an oral surgeon as "urgent". All other delays in Plaintiff receiving his surgery were done at the scheduling of Dr.

Swanson. Dr. Swanson initially scheduled the surgery and then rescheduled the surgery. There is no evidence that Fenoglio participated in the scheduling of Plaintiff's surgery or that he sought to reschedule or delay the surgery. All the evidence indicates that Fenoglio acted promptly in seeking to have Plaintiff seen by an oral surgeon.

Plaintiff makes much of the fact that there is a dispute over whether Fenoglio saw Plaintiff on April 28, 2010. Fenoglio maintains that he did not physically examine Plaintiff until May 10, 2010 for Plaintiff's pre-op preparations as Plaintiff was not Fenoglio's patient. This position is supported by the medical records which indicate that Plaintiff saw Fenoglio only on May 10, 2010. Plaintiff's Complaint indicates that he saw Fenoglio on April 29, 2010, but no evidence in the record supports this allegation. Further, Plaintiff testified in his deposition that he saw Fenoglio on April 28, 2010 along with Defendant Hardy for approximately five minutes from a distance and that Fenoglio never spoke to him or examined him but simply sat in his chair (Doc. 86 Ex. C-1 at pp. 49-50). This appears to be contradictory to Plaintiff's other testimony that he saw Defendant Hardy while he was in the Lieutenant's office dealing with his disciplinary ticket.

Even assuming that Plaintiff's testimony is true that Fenoglio saw Plaintiff on April 28, 2010, this is not evidence of deliberate indifference on Fenoglio's part. The evidence in the record suggests that upon examining Plaintiff on April 28, 2010, Defendant Hardy scheduled Plaintiff for x-rays and to be seen by the dentist. Both of these events were scheduled for the following day and confirmed Plaintiff's broken jaw, which led to Fenoglio to seek approval from Wexford, the same day, to be seen by an oral surgeon. Even if Fenoglio was present when Defendant Hardy examined Plaintiff on April 28, 2010, there is no evidence that he caused any delay in treatment. Tests were scheduled for the following day to confirm Plaintiff's condition and then steps were taken to have Plaintiff seen by an oral surgeon. Accordingly, the Court finds that Defendant Fenoglio is entitled to

summary judgment on the claims against him.

*4. Wexford*

Defendant Wexford also maintains that it is entitled to summary judgment on Plaintiff's deliberate indifference claim because Plaintiff has failed to point to any Wexford policy that caused the deprivation of his constitutional rights. Wexford can be held liable for deliberate indifference to Plaintiff's medical care only if it maintained a policy or custom that violated Plaintiff's rights. ***See Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (corporations that contract with prison and jail facilities to provide medical care are treated as municipalities for purposes of § 1983); *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000) ("municipality may be liable for harm to persons incarcerated under its authority 'if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of prisoners.'"); *Shields v. Illinois Dept. of Corrections*, --F.3d--, 2014 WL 949950, at * 12 (7th Cir. March 12, 2014) ("under our current precedent, [a plaintiff] must offer evidence that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy").** Such a policy or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation." ***Minix*, 597 F.3d at 832.** In other words, the corporation can be held liable when the implementation of the policy or custom inflicts an injury on the plaintiff. ***Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).**

Here, Plaintiff has failed to point to a policy or practice of Wexford that caused the delay in his treatment. Plaintiff alleged in his Complaint that Wexford had an official policy to save money by delaying or denying medical care which led to his oral surgery being delayed. However, Plaintiff cites to no such policy in his responsive brief. Instead, he merely cites to his Complaint.

Plaintiff pointed to his Complaint to show that Wexford had a policy of prohibiting prescription narcotic pain medications. He pointed to his initial meeting with Defendant Hardy where she allegedly gave him no care and then after he received his x-ray confirming a broken jaw he, according to his Complaint, alleged that both Fenoglio and Hardy responded to his request to be checked out for a possible concussion and possible cracked ribs by stating "We don't do that!". However, this conversation has nothing to do with either Wexford's policy regarding cost cutting methods or its policy regarding narcotic pain medications. Wexford has indicated that they have no such policies and Plaintiff has failed to point to any evidence of such policies.

Further, Wexford indicated that they did not have a policy prohibiting referral of an inmate to a hospital for emergent care. Plaintiff, in response, merely indicates that his lack of healthcare and his not being seen by a surgeon for eleven days and having to wait twenty-four days for surgery was a result of Wexford policies. Plaintiff, however, has pointed to no such policies that prevented him from being seen by a surgeon sooner than he was or which kept him from receiving surgery prior to May 19, 2010. Plaintiff admits that it was Dr. Swanson's office, not any employee of Wexford or Wexford itself, who scheduled Plaintiff's surgery initially for May 12, 2010 and then later rescheduled the surgery for May 19, 2010 due to an emergency (Doc. 96 at ¶¶ 28 and 29). Plaintiff has failed to point to any evidence that a Wexford policy caused this delay in surgery. Thus, the Court finds that there is no evidence that Wexford was deliberately indifferent to Plaintiff's broken jaw and thus Wexford is entitled to summary judgment on this claim.

**D. Retaliation**

Defendant Jason Henton also filed a motion, arguing that he is entitled to summary judgment on Plaintiff's retaliation claim. Plaintiff alleges that Henton was responsible for his cell transfer and that he placed him in a cell with Inmate Scott in retaliation for Plaintiff's wife seeking

intervention from a politician on Plaintiff's behalf. An official who retaliates against a prisoner because that prisoner filed a grievance violates the prisoner's First Amendment rights. ***DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).** Establishing a claim of retaliation requires a prisoner to show the following: (1) that he engaged in a protected activity, (2) he suffered a deprivation likely to prevent future protected activities, and (3) there was a causal connection between the two. ***See also Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).** A defendant can still prevail, however, if he shows that the offending action would have happened even if there had been no retaliatory motive, i.e. "the harm would have occurred anyway. ***Mays v. Springborn*, 719 F.3d 631, 634-35 (7th Cir. 2013); *Greene v. Doruff*, 660 F.3d 975, 977-80 (7th Cir. 2011). At summary judgment, "mere speculation" by the plaintiff is insufficient to carry his burden. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 544 F.3d 752, 757 (7th Cir. 2008); *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013).**

Plaintiff argues that Henton was acting Assistant Warden of Operations when Plaintiff was moved to a cell with Terry Scott and that as acting warden he directly supervised the placement office. However, the doctrine of *respondeat superiour* is not applicable to § 1983 claims, thus a defendant can only be held liable if he was "personally responsible for the deprivation of a constitutional right." ***Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).** In other words, there is no such thing as "supervisory liability" under § 1983. ***See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011).** Instead, an individual can only be held liable for his or her own personal actions and their own knowledge, and they are not liable for the knowledge or action of those individuals whom they supervise. ***Id.*; *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).** "[S]upervisors who are

merely negligent in failing to detect and prevent subordinates' misconduct are not liable." ***Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001).** However, a supervisor can be personally involved in the violation when he "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent." ***Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986); *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); Sanville, 251 F.3d at 740.** A supervisor is liable only for his own misconduct, not for the misconduct of others under his authority. ***Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985).**

As Henton cannot be held liable on a theory of respondeat superior for his role as supervisor of the placement office, he can only be liable for retaliation if he directed that Plaintiff be retaliated against by being placed in a cell with Terry Scott or he had knowledge or consented to the retaliation. Here, Plaintiff has only offered circumstantial evidence of retaliatory motive; this evidence indicates that the placement office moved Plaintiff the day after his wife called State Representative Black and placed him in a cell with Terry Scott who wore a security tag due to his violent propensities. However, there is no evidence that Henton directed the placement office to place Plaintiff in a cell with Terry Scott, nor has Plaintiff offered any evidence that Henton knew about any of the requests that Plaintiff be moved or that Plaintiff's wife had talked with a state representative.

Plaintiff instead argues that the Court should infer that Henton knew about these requests because Defendants failed to produce any documents regarding Plaintiff's cell transfer or showing the identities of those involved in Plaintiff's placement. Plaintiff argues that Defendants have concealed the identity of those individuals in the placement office with knowledge of Plaintiff's cell transfer. However, Plaintiff offers no evidence to support this accusation and his argument that Defendants failed to produce discovery is untimely. Discovery closed in this case on September 16,

2013. Plaintiff's counsel entered his appearance on May 13, 2013 (Doc. 82) and thus had plenty of time prior to the close of discovery to seek discovery from Defendants or to bring any discovery issues, including Defendants' alleged failure to turn over documents, to the Court's attention. Plaintiff never did so and, instead, waited until his responsive brief to the summary judgment to raise discovery issues. By then, the time for settling discovery disputes had long since passed. Thus, the Court will not make any negative inferences based on Defendants' alleged failure to produce certain discovery as Plaintiff requests. As Plaintiff has offered no evidence that Defendant Henton retaliated against Plaintiff or gave his consent or had any knowledge of such retaliation, the Court finds that Defendant Henton is entitled to summary judgment on Plaintiff's claim against him.

## IV. Conclusion

Accordingly, the Court **GRANTS** Defendants' motions for summary judgment (Docs. 85, 86 and 87, 88). Defendants Elaine Hardy, Helen Haines, James Fenoglio, Wexford Health Sources, Inc., and Jason Henton are dismissed from the case.

The only claims left for trial are Plaintiff's failure to protect claims against Defendants James Ochs and Aaron Middleton.

**IT IS SO ORDERED**.
DATED: March 28, 2014

*/s/ Stephen C. Williams*
United States Magistrate Judge